KANSAS CITY, CLINTON & SPRINGFIELD RAILWAY COMPANY, Appellant, v. HENRY WOOLARD, Road Overseer, Respondent,

Kansas City Court of Appeals, January 28, 1895.

Roads and Highways: DEDICATION: LANE BETWEEN FARMS: EVIDENCE. The bare fact that a farmer leaves a lane through his farm for his own convenience and permits the public to use it as a highway, does not authorize an inference that he intends to dedicate such road to the public; and the evidence in this case does not warrant a finding that the road in question was a public one, following *Stacey v. Miller*, 14 Mo. 336.

*Appeal from the Polk Circuit Court.*—HON. ARGUS COX, Judge.

REVERSED AND REMANDED (*with directions*).

*Wallace Pratt* and *J. C. Cravens* for appellant.

(1) The road was undoubtedly left open originally by the owners of the land as a private way for their own convenience, and the mere fact that it was made use of by the people of the neighborhood without objection does not operate as a dedication to public use, or convert it in any legal sense into a public highway, and thus lay upon the road overseers the duty of keeping it in repair. Elliott, Streets and Roads, p. 3; *Stacey v. Miller*, 14 Mo. 478; *Brinck v. Collier*, 56 Mo. 160; *Baker v. Vanderberg*, 99 Mo. 378; *State v. Guernsey*, 9 Mo. App. 312; *Austenreith v. Railroad*, 36 Mo. App. 254; *Landis v. Hamilton*, 77 Mo. 544; *State v. Proctor*, 90 Mo. 334. (2) Lapse of time gives the public no right to the use of a private way unless in addition to the mere use, public money or labor has been expended upon it as a public highway. R. S., sec. 7847. (3) A proper test as to whether this road

was in any sense a public highway is, was the road officers of the county bound, under the law, to keep it in repair. Could the overseers have been indicted or proceeded against for non-repairs? The question is, was there any such acceptance or appropriation of this road by municipal authorities as to render the municipality in any sense amenable to the public or to individuals for failure to keep it in repair. *Moore v. Cape Girardeau*, 103 Mo. 470; *Keating v. City*, 84 Mo. 415.

*J. D. Abbe* and *J. M. Leavitt* for respondent.

(1) The evidence shows conclusively that this was a public road within the meaning of the statute concerning roads, and especially of the statute concerning railroads crossing public roads. R. S. 1889, sec. 2609. This was the law when, and long before, plaintiff built its road. R. S. 1879, sec. 807; *Brown v. Railroad*, 20 Mo. App. 427; *State v. Warner*, 51 Mo. App. 178, 179, and cases there cited. From the time this road was opened, over fifty years ago, to this time, nothing was ever said or done by any owner of the land against the right of the public to use the road. (2) The proceedings of the county court in relation to this road could not change its status, nor affect the question whether it was a public road or not. *State v. Wells*, 70 Mo. 635; *State v. Walters*, 69 Mo. 463; *State v. Culver*, 65 Mo. 607. It need not have been constituted or recognized by the county court. User by the public acquiesced in by the owners for ten years is sufficient. *State v. Walters, supra; State v. Wells, supra; Brown v. Railroad, supra.* (3) Plaintiff had no right to fence this road in any way, except as a public road, and it was its duty to maintain it as a public road and public crossing. *Seward v. Railroad*, 33 Iowa, 387; *Luckie v. Railroad*, 76 Mo. 642; 1 Rorer on Railroads, 1622.

SMITH, P. J.—This is a proceeding invoking the injunctive process of the circuit court to restrain the defendant as road overseer from interfering with and tearing down the fences inclosing the right of way of the defendant railroad corporation. There was a trial in the court below resulting unfavorably to plaintiff.

The case as appears from the record is about like this. A lane or passage way between two adjoining landed proprietors had been left open by them for their own convenience. A neighborhood road passed east and west through this lane, which had been traveled by persons having occasion to pass that way for a great number of years. It had been continuously open, except at one time it was closed up for a short period. There was a wet, marshy place in the lane and at this point it was ditched many years ago. One witness testified that the ditch was dug by Crow while he was road overseer. But the correctness of this is made doubtful by the contradictory testimony of the brother of Crow, the road overseer. It likewise appears that Squire Thompson, a road overseer, who was one of the adjoining proprietors, in connection with the other, at one time did some work in the lane, but whether in his capacity of road overseer or for his own convenience does not clearly appear. Several witnesses who in years past had been road overseers of the district in which the road in question was located, testified that it was never in the list of roads worked by them and that they never exercised any authority over it. Some of these further testified that they had resided in that road district for forty years and that this road had never been recognized or worked by the road overseer as a public road. The testimony of these witnesses is such as to satisfy our minds that this was never a public road.

But this is not all. It appears that in 1890 a peti-

tion signed by a number of freeholders of the municipal township, some of whom were presumably of the immediate neighborhood of the said road, was presented to the county court for the opening of the road as a public road. Afterward the road was established by the order of the county court. It is not pretended that this order was effective as to the plaintiff, over whose right of way the road was ordered to be opened, since it appeared there was no notice to plaintiff of the proceeding, nor relinquishment by it of the right of way, nor were there any steps taken to acquire the same by condemnation. This proceeding did not confer upon the defendant any authority to interfere with plaintiff's fences, nor is it insisted that it did. But the clear and unmistakable inference to be drawn from it is that neither the freeholders of the road district nor the county court regarded the road as a public one, or else why did they take steps to open it as such?

We can not discover that under the evidence the case is within the rule declared in *State v. Culver*, 65 Mo. 607, nor in that of *State v. Wells*, 70 Mo. 635, but we think it is more like that of *Stacey v. Miller*, 14 Mo. 336, where it is said by Judge NAPTON "that the bare fact that a farmer leaves a lane through his farm for his own convenience, and permits the public to use it as a highway does not authorize any inference that it is his intention to dedicate such road to the public." It is our conclusion that the evidence did not warrant the court in finding that the road was a public one. And for that reason the decree was erroneous.

We think the temporary injunction should have been made perpetual, and accordingly we shall reverse the decree of the circuit court with directions to that court to enter a decree making perpetual the temporary injunction. All concur.